David **LEIBERKNECKT**, Conservator and Guardian of Daniel Leiberkneckt; David Leiberkneckt; and Diane Leiberkneckt, Individually, Plaintiffs,

v.

**BRIDGESTONE/FIRESTONE, INC.**; The Goodyear Tire & Rubber Company; Motor Wheel Corporation; MWC Holdings, Inc.; Motor Wheel Corporation of Canada, Ltd.; and Hayes Wheels International, Inc., Defendants.

No. C 96–3020–MWB.

United States District Court, N.D. Iowa, Central Division.

Oct. 9, 1997.

Fred L. Morris of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, IA, for Plaintiffs.

L.W. Rosebrook of Ahlers, Cooney, Dorweiler, Hayne, Smith & Allbee, P.C., Des Moines, IA, Christopher S. Shank of Rouse, Hendricks, German, May & Shank, P.C., Kansas City, MO, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING MOTION TO DISMISS BY DEFENDANTS MOTOR WHEEL CORPORATION, MWC HOLDINGS, INC., MOTOR WHEEL CORPORATION OF CANADA, LTD., and HAYNES WHEELS INTERNATIONAL, INC.**

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................... 301
II. STANDARDS FOR MOTION TO DISMISS ............................... 302
III. FACTUAL BACKGROUND ........................................... 304
IV. LEGAL ANALYSIS .............................................. 304
    A. The Parties' Contentions ................................. 304
    B. Statutes of Limitation and the Iowa Discovery Rule ......... 305
    C. Does the Discovery Rule Apply to Daniel's Claims Against Motor Wheel? ..... 306
    D. Did the Appointment of a Guardian Cause Daniel's Claims to Accrue? ........ 308
    E. Certification of the Issues to the Iowa Supreme Court ...................... 309
    F. David and Diane's Claims for Loss of Consortium ......................... 311
V. CONCLUSION ................................................. 311

When does the statute of limitations begin to run against a plaintiff who, in the incident from which his products liability claim arises, suffers traumatic brain injuries of such magnitude that he is unable to comprehend that he has sustained injury? This question, raised by defendants' motion to dismiss, requires the court to explore unchartered territory in Iowa's discovery rule. Defendants contend that the statute of limitations began to run on the day the plaintiff sustained his injuries. The plaintiffs disagree, arguing that under the Iowa discovery rule, the statute has not yet begun to run. The court must first determine whether Iowa's discovery rule is applicable here. If so, the court must next determine when plaintiffs claims accrued. Only after these troubling issues are resolved may the court consider whether the statute of limitations bars plaintiffs' claims.

## I. INTRODUCTION AND BACKGROUND

This products liability lawsuit arises out of a tragic multi-piece tire rim explosion which

occurred on May 31, 1994. As a result of the explosion, Daniel Leiberkneckt ("Daniel") suffered catastrophic facial and closed head injuries. He has remained in what plaintiffs describe as a "chronic vegetative state" since the incident. Daniel's parents, plaintiff David Leiberkneckt, individually, and as conservator and guardian of Daniel, and plaintiff Diane Leiberkneckt ("the Leiberkneckts") filed their initial complaint on February 20, 1996, against Bridgestone/Firestone, Inc. and The Goodyear Tire & Rubber Company. These defendants are not involved in this motion to dismiss.

On January 8, 1997, the Leiberkneckts filed their first Amendment to Complaint for the purpose of adding three additional defendants: MWC Holdings, Inc., Motor Wheel Corporation; and Motor Wheel Corporation of Canada, Ltd. The Leiberknects filed their Second Amended Complaint, adding yet another defendant, Hayes Wheels International, Inc. on February 27, 1997. The Leiberkneckts allege claims of strict liability, failure to warn, and negligence against these four defendants. Counts VII and XI of the Second Amended Complaint are derivative claims asserted by David and Diane for loss of consortium and/or cost of care and support.

On March 31, 1997, defendants MWC Holdings, Inc., Motor Wheel Corporation, Motor Wheel Corporation of Canada, Ltd., and Hayes Wheels International, Inc. (collectively "Motor Wheel") filed a motion to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motor Wheel defendants contend that the Second Amended Complaint fails to state a claim upon which relief can be granted because the claims are time-barred under the applicable Iowa statute of limitations.

The Leiberkneckts filed their resistance to this motion on April 11, 1997. Although the Leiberkneckts agree that the applicable statute of limitations is two years, they contend that their claims against Motor Wheel are still viable under the Iowa discovery rule. Alternatively, they assert that the statute of limitations was tolled by a variety of statutory tolling provisions.

The court heard oral arguments telephonically on September 2, 1997. The Leiberkneckts were represented by counsel Fred L. Morris of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, Iowa. The Motor Wheel defendants were represented by counsel L.W. Rosebrook of Ahlers, Cooney, Dorweiler, Hayne, Smith & Allbee, P.C., Des Moines, Iowa, and Christopher S. Sink of Rouse, Hendricks, German, May & Shank, P.C., Kansas City, Missouri. At the conclusion of the arguments, the parties requested additional time to further brief the issues explored in the hearing. The court granted this request, and both parties submitted supplemental briefs considering the potential effects of the discovery rule and the appointment of a guardian on the accrual of plaintiffs' claims.[1]

## II  STANDARDS FOR MOTION TO DISMISS

Motor Wheel urges the court to dismiss the Leiberkneckts' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss may be made, *inter alia*, for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) requires the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted. FED. R. CIV. P. 12(b).[2] Such motions "can serve a

---

1. The court suggested the following formulation of the discovery rule issues:

   1. Does the discovery rule apply to situations in which a plaintiff suffers a traumatic brain injury that prevents the plaintiff from comprehending that he has in fact been injured; and if so:
   2. What effect, if any, does the appointment of a guardian have on the accrual of the plaintiff's claim?

2. However, where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV P. 12(b)(6); *see also Buck v. FDIC*, 75 F.3d 1285, 1288 n. 3 (8th Cir.1996) (observing that because the district court relied on matters outside the complaint in ruling on a Rule 12(b)(6) motion, "the district court had to treat the [defendant's] motion to dismiss as a

useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir.1968), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989).

In considering a motion to dismiss under Rule 120(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1303–04 (8th Cir.1997) ("In considering a motion to dismiss, we assume all facts in the complaint are true, construe the complaint in the light most favorable to the plaintiff, and affirm the dismissal only if 'it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief,'" quoting *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir. 1994)); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir. 1997) ("In considering a motion to dismiss, the court must construe the complaint liberally and assume all factual allegations to be true."); *First Commercial Trust Co. v. Colt's Mfg. Co.*, 77 F.3d 1081, 1083 (8th Cir.1996) (same).

The court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir.1997) (citing *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir.1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987), and 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences;" quoting *Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the facts alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)); *accord Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–02 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Doe*, 107 F.3d at 1304 (dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts which

motion for summary judgment and apply the relevant standards for summary judgment," and further noting that "[t]he standards for dismissing a complaint under Rule 12(b)(6) are substantially different" from those applicable to a Rule 56 summary judgment motion; therefore it was inappropriate for the district court to fail to specify whether it was disposing of an issue according to summary judgment or Rule 12(b)(6) standards). Even where matters outside of the pleadings are presented to the court, however, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss." *Skyberg v. United Food & Commercial Workers Int'l Union, AFL–CIO*, 5 F.3d 297, 302 n. 2 (8th Cir.1993). Where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture." *Id.* No other materials have been offered in support of Motor Wheel's motion to dismiss in this case. Therefore, the motion to dismiss will not be disposed of as provided in Rule 56, but only according to the standards stated herein.

would entitle the plaintiff to relief,'" quoting *Coleman,* 40 F.3d at 258); *WMX Techs., Inc.,* 105 F.3d at 1198 ("Dismissal should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts that would entitle relief," citing *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02). The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995) (internal quotations omitted).

With these standards in mind, the court turns to consideration of Motor Wheel's motion.

### III. FACTUAL BACKGROUND

The factual allegations for the Leiberkneckts' claims against the Motor Wheel defendants are found in Counts VII–XIV of the Second Amended Complaint. This court will assume the allegations to be true for purposes of this motion because motions to dismiss are to be considered on the basis of the face of the complaint. FED. R. CIV. P. 12(b)(6).

On May 31, 1994, Daniel was gravely injured when a "tractor type tire" containing a multi-piece rim assembly manufactured by Motor Wheel exploded or explosively separated. Daniel was servicing the tire and rim assembly in the course of his duties as an employee of OK Tire Supply. As a result of the explosion, Daniel suffered severe, permanent mental and physical injuries and disabilities. He has remained in a "chronic vegetative state" from which no recovery is likely or anticipated. Daniel was twenty-one years old at the time of the incident.

On February 9, 1996, David Leiberkneckt was appointed Daniel's conservator and guardian. On February 27, 1997, the Leiberkneckts filed their Second Amended Complaint, naming the Motor Wheel defendants. As is apparent from the caption of the Second Amended Complaint, David brought this action on Daniel's behalf. David and Diane also assert derivative claims for loss of consortium and/or cost of care and support.

The timeline of events is of paramount importance to the resolution of this matter and is summarized as follows:

### TIMELINE

| DATE | EVENT |
| --- | --- |
| 5/31/94 | Daniel is rendered into a chronic vegetative state by the exploding multi-piece rim assembly |
| 2/9/96 | David is appointed Daniel's conservator and guardian |
| 5/31/96 | Statute of limitations expires for Daniel's claims against Motor Wheel if the statute began to run on the date of injury |
| 2/27/97 | The Leiberkneckts file their Second–Amended Complaint naming the Motor Wheel defendants |

### IV. LEGAL ANALYSIS

#### A. The Parties' Contentions

This case, before the court on diversity jurisdiction, is controlled by Iowa law. *See Frideres v. Schiltz,* 113 F.3d 897, 898 (8th Cir.1997); *Waitek v. Dalkon Shield Claimants Trust,* 908 F.Supp. 672, 678 (N.D.Iowa 1995). As indicated previously, Motor Wheel moves the court to dismiss all counts of the Leiberkneckts' Second Amended Complaint against it on the ground that the Leiberkneckts' claims are time-barred under Iowa Code 614.1(2).

Section 614.1(2) supplies the general statute of limitations for tort actions. It provides, in pertinent part, that:

Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:

\*　　\*　　\*　　\*　　\*　　\*

**Injuries to person or reputation-relative rights-statute penalty.** Those founded on injuries to the person or reputation, including injuries to relative rights, whether

based on contract or tort, or for a statute penalty, within two years.

Iowa Code § 614.1(2). Motor Wheel argues that the Leiberkneckts' reliance on Iowa's discovery rule is misplaced. It asserts that Daniel's claim accrued within the meaning of § 614.1(2) on the date of the explosion. At that time, Motor Wheel contends, all of the information necessary for Daniel's claims was known to the Leiberkneckts. Motor Wheel further asserts that none of the statutory tolling provisions raised by the Leiberkneckts apply to the facts presented here.

The Leiberkneckts agree that the applicable statute of limitations is two years. They contend, however, that their claims are timely under the Iowa discovery rule because the nature of Daniel's injuries has precluded Daniel from discovering that he has suffered injuries. Alternatively, the Leiberkneckts assert that if the discovery rule is inapplicable, the statute of limitations is tolled under Iowa Code §§ 614.8, 668.8, and 613.18(3).[3]

The court observes that the unique facts presented in this case appear to raise novel limitation issues under Iowa law. Here, the court is confronted with a situation in which an adult plaintiff (Daniel) who, due to injuries he sustained in the events giving rise to his claim, has remained in a continuous, chronic vegetative state. If Daniel's claims accrued on the date of his injury, the statutory limitation period expired on May 31, 1996. As Motor Wheel points out, the Second Amended Complaint was filed approximately nine months after this date.[4]

However, Motor Wheel's position presupposes that Daniel's claim did in fact accrue on the date he was injured. The court is not convinced that such a presupposition should be made here. Therefore, the court must first determine when, under these unique circumstances, Daniel's claims accrued.

Once this determination is made, the court may consider whether the statute of limitations ran prior to the filing of the Second Amended Complaint.

### B. Statutes of Limitation and the Iowa Discovery Rule

Statutes of limitation are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974) (quoting *Order of Railroad Telegraphers v. Railway Express Agency, Inc.* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). Recently, the Iowa Supreme Court reiterated this purpose and observed that statutes of limitation strike a balance between the competing interests of the parties to a lawsuit:

> The plaintiff wishes to have a reasonable time to bring the suit in order that he [or she] may identify the various acts of negligence, the parties responsible, and the extent of his [or her] damages. The defendant, on the other hand, seeks to avoid having to defend against stale claims because witnesses' memories may fade or other evidence may be lost. The limitation period is also designed to bring repose and an end to the assertion of claims.

*Borchard v. Anderson,* 542 N.W.2d 247, 251 (Iowa 1996) (quoting *LeBeau v. Dimig,* 446 N.W.2d 800, 803 (Iowa 1989)). Statutes of limitation reflect the policy determination that after a certain period of time, the "right to be free of stale claims ... comes to prevail over the right to prosecute them." *American Pipe & Constr. Co.,* 414 U.S. at 554, 94 S.Ct. at 766 (quoting *Railroad Telegraphers,* 321 U.S. at 349, 64 S.Ct. at 586). These statutes also promote judicial efficiency by

---

**3.** Iowa Code § 614.8 tolls the statute of limitations on behalf of "mentally ill persons, so that they shall have one year from and after the termination of such disability within which to commence said action." Iowa Code § 614.8. Section 668.8 provides that the filing of a petition under Chapter 668 "tolls the statute of limitations for the commencement of an action against all parties who may be assessed any percentage of fault ..." Iowa Code § 668.8. Section 613.18(3) "tolls the statute of limitations to allow identification of manufacturers in products liability cases." *Harrington v. Toshiba Machine Co.,* 562 N.W.2d 190 (Iowa 1997) (interpreting Iowa Code § 613.18(3)).

**4.** Of course this does not preclude the possibility that the statute was tolled by a statutory tolling provision.

relieving courts from the cumbersome burden of adjudicating stale claims. *See Insurance Co. of N. Am. v. Coast Catamaran Corp.,* 753 F.Supp. 804, 805 (S.D.Iowa 1991) (noting that statutes of limitations serve the important purpose of preventing the filing of stale claims); *Schulte v. Wageman,* 465 N.W.2d 285, 286 (Iowa 1991) (observing that statutes of limitations are "practical and pragmatic devices used to spare our courts from the added burden from the litigation of stale claims").

Although limitations statutes effectuate necessary and important policies, they have the propensity to work hardships in individual cases. By definition, statutes of limitation are "arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay." *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945).

■ The discovery rule is a judicially created exception designed to ameliorate the harsh, and sometimes unjust, results stemming from the strict application of a limitation statute. Iowa has adopted this common law rule, recognizing that "a statute of limitations should not bar a plaintiff who is unaware of the accrual of a claim and could not have been aware of it in the exercise of reasonable diligence." *LeBeau v. Dimig,* 446 N.W.2d 800, 801 (Iowa 1989) (citing *Chrischilles v. Griswold,* 260 Iowa 453, 150 N.W.2d 94, 100–01 (1967)). As a practical matter, this rule prevents the applicable statute of limitations from commencing to run until such time when a plaintiff knows, or should have known of the injury sustained. *Frideres v. Schiltz,* 113 F.3d 897, 898–99 (8th Cir.1997) (discussing the Iowa discovery rule). As the Eighth Circuit Court of Appeals recently observed:

> Under Iowa law, the "statute of limitations begins to run when the injured person discovers or in the exercise of reasonable care should have discovered the allegedly wrongful act." *Franzen v. Deere & Co.,* 377 N.W.2d 660, 662 (Iowa 1985). Actual knowledge of one's injury or claim is not required. *Sparks v. Metalcraft, Inc.,* 408 N.W.2d 347, 351 (Iowa 1987). "The statute begins to run when the person gains knowledge sufficient to put him on inquiry." *Id.* Once the plaintiff gains such knowledge, the "plaintiff is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation." *Id.* Moreover, "the duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury." *Franzen,* 377 N.W.2d at 662. Rather, "[i]t is sufficient that the person be aware that a problem existed." *Id.*

*Roth v. G.D. Searle & Co.,* 27 F.3d 1303, 1306 (8th Cir.1994).

It is undisputed that the two-year limitation provided in Iowa Code section 614.1(2) applies to all of the Leiberkneckts' claims because all are based on injuries to the person. *See Waitek,* 908 F.Supp. at 679 (citing *Franzen,* 334 N.W.2d at 733). It is equally clear under Iowa law, that the discovery rule may apply to claims governed by Iowa Code § 614.1(2). *See, e.g., Bressler v. Graco Children's Prod., Inc.,* 43 F.3d 379, 380–81 (8th Cir.1994) (considering Iowa discovery rule in products liability action); *Sparks,* 408 N.W.2d at 351 (applying discovery rule to negligence claim). Therefore, the court must determine whether the discovery rule applies to the peculiar facts presented here.

### C. Does the Discovery Rule Apply to Daniel's Claims Against Motor Wheel?

■ Iowa courts have yet to address the role of the discovery rule in situations in which a plaintiff, who has suffered a traumatic brain injury through the very events giving rise to the claim, is literally *unable* to "discover" the injuries he or she has sustained, let alone their source.

Several courts addressing this issue have found the discovery rule applicable in situations where the injury of which the plaintiff complains actually precludes the plaintiff from being aware of the injury. *See, e.g., Washington v. United States,* 769 F.2d 1436, 1439 (9th Cir.1985) (concluding that comatose plaintiff's claim did not accrue at time plaintiff fell into coma as a result of alleged medical malpractice); *Clifford v. United States,* 738 F.2d 977, 980 (8th Cir.1984)

(agreeing that comatose plaintiff's claim for malpractice did not accrue on the date alleged malpractice rendered plaintiff comatose, but rather on date guardian was appointed); *Zeidler v. United States,* 601 F.2d 527, 531 (10th Cir.1979) (remanding for evidentiary hearing to determine when lobotomized plaintiff "knew or should have known that he suffered an injury which gave rise to a possible lawsuit ..."); *Stone v. Rosenthal, M.D.,* 665 So.2d 276, 277–78 (Fla.Dist.Ct. App.1995) (observing that comatose plaintiff did not have notice of the injury and therefore, claim did not accrue when the alleged malpractice that caused him to fall into a coma occurred); *Carlson v. Pepin County,* 167 Wis.2d 345, 481 N.W.2d 498, 500–01 (1992) (applying the discovery rule and concluding that brain damaged plaintiff's claim did not accrue while he was comatose because he "reasonably could not have discovered his injury or its cause"); *see generally Barnhart v. United States,* 884 F.2d 295, 298–99 (7th Cir.1989), *cert. denied,* 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990) (observing that if applied, the " 'discovery' rule would permit tolling of the statute of limitations if the condition of which [Barnhart] complain[ed] rendered him incapable of 'discovering' the cause of his injury."); *see also, Pardy v. United States,* 575 F.Supp. 1078, 1080 (S.D.Ill.1983) (concluding that the discovery rule applies when a "plaintiff is rendered incompetent by the government's allegedly tortious conduct."). In these situations, courts have recognized that a cause of action does not accrue until the plaintiff may reasonably be charged with knowledge that he or she has in fact sustained injury; and could be expected to discover its cause. *See Barnhart,* 884 F.2d at 298–99, *cert. denied,* 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743.

The Eighth Circuit Court of Appeals has considered a situation similar, though not identical, to the scenario presented here. In *Clifford v. United States,* 738 F.2d 977, 978 (8th Cir.1984), the plaintiff's guardian brought an action pursuant to the Federal Torts Claim Act ("FTCA") for injuries the ward ("Allen") sustained as a result of alleged medical malpractice by government doctors. *Clifford,* 738 F.2d at 978. The complaint alleged that Allen had fallen into a permanent coma as a result of the malpractice. *Id.* Concluding that the claim accrued on the day Allen fell into the coma, the district court determined that the action was barred by the two-year statute of limitations.[5] *Id.* at 979.

The Eighth Circuit Court of Appeals reversed, holding that the statute of limitations did not run during the time Allen was comatose. *Id.* at 980. The court rejected the government's argument that because Allen's injuries were readily observable to his family, the claim accrued on the date Allen fell into a coma. The court stated:

> "[I]t would strain logic and reason to suggest that [plaintiff] could have [acted] had he wished.... During the comatose period, [he] was incapable of comprehending the elements of possible malpractice or of pursuing a remedy for the injuries sustained. More significantly, the very tort that allegedly forms the basis of this suit caused the incapacity."

*Id.* at 979 (quoting *Dundon v. United States,* 559 F.Supp. 469, 474 (E.D.N.Y.1983)). Because of the coma, Allen was unaware he suffered any injury. Therefore, his claim did not accrue on the date of the alleged malpractice, but rather on the date a guardian was appointed for him. *Id.*[6] At that time, a person with "requisite knowledge of [Allen's] injury had a legal duty to act for him." *Id.*

---

**5.** FTCA claims are governed by a two-year statute of limitations that provides, in pertinent part:
> A tort claim against the United States shall be forever barred unless it is presented ... within two years after such claim *accrues* ...

28 U.S.C. § 2401(b) (emphasis added).

**6.** The court observed that Allen's situation was analogous to a situation confronted by the Tenth Circuit Court of Appeals in *Zeidler v. United States. Id.* In *Zeidler,* the plaintiff's conservator

filed a malpractice claim against the VA for lobotomies performed on the plaintiff nearly thirty years earlier. The *Zeidler* court held that the action should not be automatically barred. Instead further inquiry was necessary to determine whether the plaintiff " 'knew or should have known that he suffered an injury which should give rise to a possible lawsuit against the government.' " *Id.* (quoting *Zeidler v. United States,* 601 F.2d 527, 531 (10th Cir.1979)).

at 979. The court acknowledged the unique factual scenario presented, noting "[h]ere we deal only with that rare situation where the alleged malpractice itself (and not some preexisting mental condition unconnected with the government) has prevented the claimant from ever obtaining [the] knowledge" necessary to start the statute of limitations running. *Id.* at 980.

The court finds reasoning in *Clifford* applicable here. According to the Second Amended Complaint, Daniel has remained in a chronic vegetative state since the moment he was injured by the alleged exploding tire rim. Daniel was an emancipated adult at the time of his injury and accordingly, his family had no legal duty to act on his behalf. *See Washington,* 769 F.2d at 1439; *Clifford,* 738 F.2d at 979. If the court accepts the Leiberkneckts' allegations as true, which it must for the purposes of this motion to dismiss, Motor Wheel's actions caused Daniel's chronic vegetative condition. Under these circumstances, the court finds that Daniel's claims did not accrue on the date of the explosion.

This conclusion is warranted, if not mandated, by the policies underlying Iowa's discovery rule. As the Eighth Circuit Court of Appeals recently observed, Iowa's discovery rule " 'is based on a theory that a statute of limitations should not bar the remedy of a person who has been excusably unaware of the existence of [a] cause of action.' " *Bressler,* 43 F.3d at 382 (quoting *Franzen,* 377 N.W.2d at 662). This court cannot conceive of a more "excusably unaware" plaintiff than one such as Daniel.

Motor Wheel asserts that the Leiberkneckts possessed all of the requisite facts on the date of Daniel's injury to put them on notice as to possible claims against Motor Wheel. Motor Wheel relies heavily upon *Franzen v. Deere & Co.,* 377 N.W.2d 660 (Iowa 1985), in support of this contention, and cites the following language from that case:

> In the present case plaintiffs knew on the date of the accident all of the facts they needed to know to be charged with a duty to investigate to determine the cause of action against defendant. Therefore, the action accrued on that date, and the two-

year statute of limitations expired before they brought this action.

*Franzen,* 377 N.W.2d at 664. The court finds Motor Wheels' reliance on *Franzen* to be misplaced. That case is factually distinguishable because here, unlike in *Franzen,* the injured plaintiff has remained, since the date of his injury, unaware that he has been injured. At all times, Daniel has been unable to discover not only his injuries but also any possible cause of those injuries. To hold as Motor Wheel suggests, would effectively punish Daniel Leiberkneckt for his parents' inaction. This is an untenable result. As the court has already stated, Daniel was an emancipated adult at the time of the explosion. His parents were under no legal duty to act on his behalf.

### D. Did the Appointment of a Guardian Cause Daniel's Claims to Accrue?

As discussed above, the court finds that Daniel's claims against Motor Wheel did not accrue on the date of the multi-piece tire rim explosion, May 31, 1994. This is so because Daniel has remained, at all times, unaware of his injuries and unable to discover them. This conclusion, however, does not end the court's inquiry. The court must now determine whether the Second Amended Complaint was timely filed in light of the fact that a guardian/conservator was indeed appointed for Daniel. The court notes that the effect of this appointment on the statute of limitations for Daniel's claims is another novel issue under Iowa law.

Whether the appointment of a guardian or conservator starts the running of the statute of limitations against a ward's claim appears to turn upon the guardian/conservator's duty to bring actions on its ward's behalf, and the knowledge with which the guardian/conservator can be charged. *See Washington,* 769 F.2d at 1438 (noting that no guardian had been appointed for comatose plaintiff and accordingly, her personal injury claim did not accrue until her death); *Clifford,* 738 F.2d at 978 (observing that claim of an emancipated, comatose plaintiff did not accrue until a guardian with a legal duty to act on plaintiff's behalf was appointed); *Stone,* 665 So.2d at 278 (rejecting assertion that family had duty

to act on behalf of emancipated, comatose plaintiff and remanding for consideration of whether a guardian was appointed and charged with requisite knowledge of potential malpractice claim); *Arthur v. Unicare Health Facilities, Inc.,* 602 So.2d 596, 599 (Fla.Dist.Ct.App.1992) (noting that guardians possess a legal right and duty to protect their wards).

▮ Although it is plausible that under Iowa law David Leiberkneckt would be charged with the requisite knowledge necessary to start the two-year limitation running,[7] the court need not decide that issue to resolve Motor Wheel's motion. Again, David was appointed Daniel's guardian on February 9, 1996. Presuming, without deciding, that the statute began to run on that day, the Second Amended Complaint, filed on February 27, 1997, was timely. At a minimum, David could bring claims against Motor Wheel for up to two years from the date of his appointment as Daniel's guardian and conservator.

One final comment. Motor Wheel suggests that the application of the discovery rule to situations such as the one presented here have the propensity to place defendants in the untenable position of being subject to open-ended claims. For example, Motor Wheel envisions a scenario in which a guardian is not appointed for many years after the incident. The court observes that Motor Wheel's "parade of horribles" is stymied by the doctrine of laches. The Iowa Supreme Court recently considered this doctrine and stated:

> Laches is an 'equitable doctrine premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another.' To establish the affirmative defense of laches, prejudice must be shown. Prejudice 'cannot be inferred merely from the passage of time.' The party asserting the defense carries the burden of establishing the essential elements by clear, convincing, and satisfactory evidence.

*Sahu v. Iowa Bd. of Med. Exam'rs,* 537 N.W.2d 674, 676 (Iowa 1995) (quoting *Com-*

*mittee on Prof'l Ethics & Conduct v. Wunschel,* 461 N.W.2d 840, 846 (Iowa 1990)) (citations omitted). Although laches is of no avail to Motor Wheel in this case, defendants facing truly aged claims would be able to invoke the defense provided they could establish disadvantage or prejudice.

### E. Certification of the Issues to the Iowa Supreme Court

▮ In its supplemental brief in support of its motion to dismiss, Motor Wheel urged, for the first time in this litigation, that the court certify the questions concerning the accrual of Daniel's claim and the effect of the appointment of a guardian on the statute of limitations to the Iowa Supreme Court.

▮ Whether a federal district court should certify a question of state law to the state's highest court is a matter "committed to the discretion of the district court." *Allstate Ins. Co. v. Steele,* 74 F.3d 878, 881–82 (8th Cir.1996) (citing *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974)); *Packett v. Stenberg,* 969 F.2d 721, 726 (8th Cir.1992) (also citing *Lehman Bros.*). Local Rule 23 of the United States District Court for the Northern District of Iowa provides that:

> When there is involved in any proceeding a question of law of a state which may be determinative of the cause then pending in this court and as to which it appears there is no controlling precedent in the decisions of the appellate courts of the state, a motion may be made to certify the question of law to the highest appellate court of the state. This court, on such motion or on its own motion, may certify such question to the appropriate court, if authorized by statute or rule.

N.D. Ia. L.R. 23. Certification is authorized by state statute in Iowa. That statute provides:

> The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district

---

7. *See Franzen,* 377 N.W.2d at 662 (explaining that under the discovery rule, statute of limitations does not begin to run "until the injured person has actual *or imputed* knowledge of all elements of the action.") (emphasis added).

court or the highest appellate court or the intermediate appellate court of another state, when requested by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.

Iowa Code § 684A.1 (1996).

This court has previously indicated that the following factors should be considered in determining whether to certify a question to a state's supreme court: (1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; and (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification. *Olympus Alum. Prod. v. Kehm Enters., Ltd.,* 930 F.Supp. 1295, 1309 n. 10 (N.D.Iowa 1996) (citing *Rowson v. Kawasaki Heavy Indus., Ltd.,* 866 F.Supp. 1221, 1225 & n. 5 (N.D.Iowa 1994))(citing *L. Cohen & Co. v. Dun & Bradstreet, Inc.* 629 F.Supp. 1419, 1423–24 (D.Conn.1986)).

The first certification factor considers whether the issue is "unsettled" by state courts. No existing precedent controls the issue of whether the discovery rule applies to a situation in which an adult plaintiff suffers a traumatic brain injury that prevents the plaintiff from comprehending that he has in fact been injured. Similarly, no existing precedent controls the issue of what effect the appointment of a guardian has on the accrual of a claim brought on behalf of such a brain injured plaintiff. The court finds that this factor weighs in favor of certification.

The second factor in the certification analysis considers the availability of legal resources which would aid the court in coming to a conclusion on the legal issue. Although it is true that the issues presented here require application of Iowa case law regarding the discovery rule, the court observes that Iowa courts have frequently discussed and applied this rule in the context of products liability actions. These cases are instructive to the matters presently before the court, and the court finds that the analysis set forth in section IV.B, *supra,* is in keeping with what the Iowa Supreme Court has said about the discovery rule, albeit in different factual contexts. Further, Iowa courts have made it clear that the discovery rule is applicable to actions governed by the two-year statute of limitations supplied in Iowa Code § 614.1(2). The court finds that this factor militates in favor of certification.

The third factor concerns the court's familiarity with pertinent state law. Sitting in diversity, this court has been frequently called upon to consider the potential applicability of the Iowa discovery rule in other products liability cases. This is not a situation in which the court is asked to consider areas of Iowa law rarely before it, such as would be the case in a lawsuit challenging the assessment of a water drainage district. Further, and significantly, the Eighth Circuit Court of Appeals has repeatedly considered the Iowa discovery rule. These cases are instructive regarding the purposes and scope of the rule. This factor points against certification.

The fourth factor addresses the relative docket load of the courts, and the fifth factor addresses the frequency that the legal issue in question is likely to recur. This court recognizes the heavy burden of decisions the Iowa Supreme Court must render. Requests to respond to certified questions should not be, and by this court are not, made lightly. The issues presented in this case are not likely to frequently recur. Here the court deals only with the narrow circumstance in which an adult plaintiff has been rendered into a "chronic vegetative state" by the very occurrence allegedly giving rise to his claim. The fact that no reported Iowa decisions address this issue demonstrates the infrequency of its occurrence. The court finds that the fourth and fifth factors weigh against certification.

The sixth certification factor considers the age of the current litigation and the possible prejudice to the litigants which may result from certification. This case is beyond the preliminary stage, and is currently scheduled for trial on July 13, 1998. Certification would almost surely result in substantial delay, a stay of discovery, and a continuance of the trial date. It has been this court's experience that certification stalls the litigation process for approximately one year. On the other hand, the court notes that beyond the delay, the parties would not likely be prejudiced by waiting for a response to certified questions. Although a closer call, this factor weighs slightly against certification.

■ Finally, the court finds that a seventh factor should be added to the certification analysis. Specifically, the court should consider whether there is any split of authority among those jurisdictions that have considered the issues presented in similar or analogous circumstances. As discussed in section IV.C., *supra*, other jurisdictions have considered the applicability of the discovery rule to situations where adult plaintiffs have been rendered comatose by the very incident giving rise to their claims, and have uniformly applied the rule absent a specific statutory directive to the contrary. In other words, the court has not found contrary authority. The court concludes that this factor also weighs against certification.

On balance, the court finds that the majority of pertinent considerations militate against certification and accordingly, the questions presented here shall not be certified.

### F. David and Diane's Claims for Loss of Consortium

■ David and Diane have advanced claims for loss of consortium and/or care and support in addition to the claims made on Daniel's behalf. The court need not determine whether these derivative claims are also timely. Iowa does not recognize a parent's claim for the loss of consortium of an adult child. *Kulish v. West Side Unlimited Corp.,*

545 N.W.2d 860, 862 (Iowa 1996); *Ruden v. Parker,* 462 N.W.2d 674, 676 (Iowa 1990); *Loftsgard v. Dorrian,* 476 N.W.2d 730, 736 (Iowa.Ct.App.1991). Further, any claim for care and support would be duplicative of the damages sought on Daniel's behalf. Duplicative damages are to be avoided. *Lara v. Thomas,* 512 N.W.2d 777, 782 (Iowa 1994); *Nassen v. National States Ins. Co.,* 494 N.W.2d 231, 236–37 (Iowa 1992), *cert. denied,* 507 U.S. 1031, 113 S.Ct. 1846, 123 L.Ed.2d 470; *Preferred Mktg. v. Hawkeye Nat'l Life Ins. Co.,* 452 N.W.2d 389, 396 (Iowa 1990). Accordingly, the court concludes that the Leiberkneckts have failed to state a claim upon which relief can be granted as to Counts VII and XI of the Second Amended Complaint.

### V. CONCLUSION

The court is mindful of the important and necessary policies supported by the enforcement of statutes of limitation. The court is equally aware of the Iowa Supreme Court's warning that although "fairness to a plaintiff provides justification for the discovery rule, ... fairness to a defendant must temper application of the rule." *LeBeau,* 446 N.W.2d at 802–03. However, where, as here, an aggrieved party potentially may be foreclosed from having his claims decided on the merits due to his blameless inability to discover his injuries and to act on his own behalf, the court concludes application of the discovery rule is appropriate.

The court's decision is not based upon the tolling of the statute of limitation, but rather upon the determination that Daniel's claims simply did not accrue until, at the earliest, the date on which his guardian was appointed.[8] Because the Second Amended Complaint was filed within two years of that date, the court concludes that the claims made on Daniel's behalf are timely and thus not barred by the statute of limitations.

The court further finds that Counts VII and XI asserted by David and Diane Leiberkneckt for loss of consortium and/or cost of

---

8. Having determined that the statute of limitation had not expired prior to the filing of the Second Amended Complaint, the court need not reach the statutory tolling arguments raised by the Leiberkneckts.

care and support fail, under Iowa law, to state a claim upon which relief may be granted.

Therefore, the court concludes that certification of the issues presented to the Iowa Supreme Court is not warranted. Motor Wheel's Motion to Dismiss is **granted** as to Counts VII and XI, and **denied** as to each and every remaining count.

**IT IS SO ORDERED.**